# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GLORIANNE BARBACANE,

        Plaintiff,

    v.                                          Case No. C-1-01-571

PNC BANK, NATIONAL ASSOCIATION,

        Defendant.

## ORDER

This matter is before the Court upon defendant's motion for summary judgment (doc. 19), plaintiff's opposing memorandum (doc. 20), defendant's reply (doc. 25), the parties' highlighted proposed findings of fact and conclusions of law (docs. 26, 29), plaintiff's notice of supplemental authority (doc. 30), and defendant's response to the notice (doc. 31).

### I. Procedural history

Plaintiff Glorianne Barbacane brings this action against her former employer, PNC Bank, National Association (PNC). Plaintiff brings claims for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and O.R.C. § 4112.14, and a claim for breach of Ohio public policy. Plaintiff alleges that she was qualified for her position as Branch Service Manager with PNC but that defendant denied her an opportunity to carry out her stated job responsibilities, treated her differently than similarly-situated younger employees,

1

engaged in a pattern and practice of age discrimination, and terminated her employment, thereby permitting defendant to hire and/or retain younger employees.

## II. Motion for summary judgment

Defendant moves for summary judgment on all claims against it. Defendant argues that (1) plaintiff cannot establish a prima facie case of age discrimination because she was not qualified for her position as a matter of law in that her performance was unacceptable; (2) a strong presumption of non-discrimination exists when the same individuals are responsible for both hiring and firing an employee; and (3) there is no evidence that defendant's reason for terminating plaintiff's employment was a pretext for age discrimination. Defendant asserts that it is entitled to summary judgment on plaintiff's public policy claim because there is no genuine issue of material fact as to her age discrimination claims and therefore no basis for finding a wrongful termination in violation of Ohio public policy.

## III. Undisputed facts

1.    Plaintiff began her employment with defendant as a Branch Service Manager III at PNC's Hyde Park Plaza branch. Plaintiff's first day in her new position was July 3, 2000. She was 59 years old at the time.

2.    Plaintiff interviewed for her position with defendant's Regional Executive Manager Dave Pendl, Regional Sales Manager Rob Heidenreich, Sector Sales Manager Victoria Angel, and Sector Service Manager Kathy Cooper. The interviewers felt that plaintiff was qualified for the position and recommended that she be offered the job. Plaintiff ultimately accepted Pendl's offer of the position at the Hyde Park Plaza branch.

3.    Plaintiff's direct supervisor was Pat Humphries. She was not involved in plaintiff's

2

interview.

4.    Plaintiff participated in a series of training sessions and an orientation given at the Bank

prior to commencing her responsibilities as Branch Service Manager at the beginning of

August. Plaintiff's training included a week of platform training in downtown Cincinnati

and a week of computer-based training at the Milford Branch of PNC.

5.    Plaintiff experienced problems in her job beginning in her first week as Branch Service

Manager.

6.    During plaintiff's first week of work, she failed to arrive on time to open the branch.

Plaintiff gave as a reason for her tardiness that Humphries allegedly had told her at an

earlier meeting that she could arrive late to work.

7.    Angel and Humphries asked Betsy Selek, Sales Support Manager, to visit the Hyde Park

Plaza branch and walk through and role-play the Bank's system to manage existing

customer relationships with plaintiff. Additionally, Michelle Miller, a PNC training

specialist, was asked to go to the Hyde Park Plaza branch and review loan training with

plaintiff one-on-one. Plaintiff also participated in a one-day Regional Community Bank

orientation program and a one-day training program on the Bank's new computer system.

Plaintiff also attended a full day of customer service training ("sales quality management

training") which Angel personally conducted.

8.    On August 8, 2000, Humphries and Angel conducted a counseling session with plaintiff

regarding her various performance deficiencies and issued her a verbal warning. The

supervisors explained to plaintiff that the performance issues were critical and must be

resolved immediately. They emphasized to plaintiff that her desk needed to be clear of

3

clutter to give it a more polished appearance and that plaintiff needed to keep her door open at all times when serving customers. Defendant emphasized the importance of customer service but warned plaintiff about spending too much time with customers. The supervisors also discussed with plaintiff whether it would be better for her to move to a smaller branch. Plaintiff was adamant about remaining at the Hyde Park Plaza branch, stating that she was committed to making things work.

9.     Humphries and Angel received numerous complaints from employees of the Hyde Park Plaza branch, including complaints that plaintiff would frequently arrive late to work, take extended lunch breaks lasting up to two hours, and eat at her desk; that plaintiff made errors resulting in customer complaints and she ignored customers; and plaintiff had an autocratic management style and ordered employees to perform personal tasks for her.

10.    On August 11, 2000, Humphries sent plaintiff an e-mail reminding her about dual control procedures when opening the branch and explained to plaintiff how "it is critical that everyone arrive at 9:00 a.m. in order to open the branch on time."

11.    On August 14, 2000, Humphries and Angel held a meeting with plaintiff, Marie Lewis, Teller Supervisor at the branch, and John Massie, the Financial Sales Consultant at the branch, to help clarify each person's roles, duties, and responsibilities.

12.    On August 15, 2000, Humphries and Angel met with plaintiff to explain how her behavior came across poorly to staff. At the meeting, they made it clear to plaintiff that the way in which she was interacting with staff was not productive and they had been receiving complaints about her conduct. Angel and Humphries emphasized that if her behavior and conduct did not improve, plaintiff would be subjected to further disciplinary action. Angel

and Humphries documented this meeting and placed the documentation in plaintiff's

personnel file.

13.  On September 1, 2000, Pendl, Humphries, Angel, and Sally Weinkam, Human Resources

Consultant at PNC, met with plaintiff to present her with a written warning regarding her

continued performance deficiencies, which included inappropriate management style,

taking two-hour lunches, poor customer service and sales, poor communication skills, and

making inappropriate comments of a sexual nature. The customer service problems

referenced were reports from the teller staff.  Management discussed tardiness with

plaintiff at the meeting. Plaintiff was criticized for having an authoritative management

style and for ignoring Lewis.

14.  Pendl decided to attend this particular meeting with plaintiff to make known his feeling

that if plaintiff's performance did not improve she could lose her position at the Bank. At

the meeting, Pendl specifically stressed the importance of plaintiff's role as a Branch

Service Manager at one of the largest branches in the region and reinforced that her

behavior must be corrected.

15.  A memo summarizing the meeting cites six employee complaints, including two incidents

which occurred during plaintiff's first day or two at the branch and which were included

in the verbal warning issued on August 8.

16.  Defendant told plaintiff there would be weekly meetings to measure the progress on the

alleged performance issues and that she would be provided guidance, instructions,

suggestions, and counseling on how to improve her performance.

17.  Angel arranged for plaintiff to spend one week at PNC's Milford branch to receive

additional training with Jeanne Cormer, the Branch Services Manager of that branch.

18.     Lewis and employee Christy Bell were instructed not to attempt to reconcile any differences with plaintiff. Massie was told to keep an eye on plaintiff and to report any problems. If plaintiff had a problem with an employee, she was not permitted to deal with it. Humphries and Weinkam directed plaintiff not to handle personnel issues and to contact them if one arose.

19.     Bell recognized efforts by plaintiff to smooth relations with Lewis. Bell observed plaintiff reaching out to Lewis and believed that the problems were not one-sided.

20.     One day after hours, Lewis and plaintiff engaged in a shouting match after plaintiff had approached Lewis in an effort to smooth out the friction between the two. Lewis became upset with plaintiff and shouted at her when plaintiff continued her attempts to discuss matters over Lewis' objections. The next day, both parties apologized and assumed partial blame for the incident.

21.     Plaintiff was performing wire transfers via telephone and facsimile, which is against bank policy for security purposes.

22.     On September 16, 2000, Massie handled an angry customer whose account had been opened by plaintiff and included many mistakes.  The customer was dismayed by the number of errors and asked Massie for plaintiff's supervisor's name and phone number.

23.     Only two weeks after she had received the written warning, plaintiff was placed on sixty-day probation during a September 18, 2000 meeting with Angel and Humphries. According to the corrective action form, the impetus for probation was tardiness during the week of training in Milford and "several customer complaints." The probation memo

also mentions "several customer complaints." Plaintiff was told that the Bank expected continued and sustained improvement in her performance.

24. At the probation meeting, plaintiff made it clear that she understood what was expected of her. When Humphries asked plaintiff if she understood the terms of her probation, plaintiff answered affirmatively, stating, "Don't be late, take care of the customers and not get any more complaints." Plaintiff believed that it was fair that she be warned but not that she be put on probation.

25. At the disciplinary meeting, plaintiff refused to sign the corrective action form because she believed she was being treated unfairly.

26. On September 18, 2000, Massie informed plaintiff about the angry customer he had handled the previous weekend. The customer had asked for the telephone numbers of plaintiff's managers and Massie had responded by providing her the numbers for Humphries and Angel. When Massie informed plaintiff of this incident she shouted out, "That bitch!" and slammed her hand on her desk. Plaintiff admits to this misconduct and stated that it was "totally wrong and totally unprofessional."

27. On September 25, 2000, defendant received another customer complaint about plaintiff. A customer had approached plaintiff for service while plaintiff was on the telephone. According to the customer, "as [the customer] walked towards her she put her hand out (shunned) to us as [if] to say don't bother me." The customer waited another 10 minutes without being acknowledged by plaintiff, approached a teller to complain about the poor customer service, and then left a note with a branch employee.

28. Also during this time frame, plaintiff came out of her office waving a check in the

7

presence of customers and asked, "Who's responsible for this?"

29.    On October 2, 2000, Humphries and Weinkam held a meeting with plaintiff to inform her

that her employment was being terminated because of unsatisfactory performance.

Plaintiff was 59 years old on the date her employment was terminated.

### IV. Applicable law

Under the ADEA, 29 U.S.C. § 623(a), an employer is prohibited from discharging older

employees on the basis of their age. Under the law of this Circuit, the same evidentiary

framework applies to discrimination claims brought under Title VII, the ADEA, and state law.

***Allen v. Ethicon, Inc.,*** 919 F. Supp. 1093, 1098 (S.D. Ohio 1996)(Weber, J.)(citing ***Mitchell v.***

***Toledo Hospital,*** 964 F.2d 577, 582 (6th Cir. 1992)).  In order to establish an employment

discrimination claim, plaintiff must introduce direct evidence of discrimination or prove

inferential and circumstantial evidence which would support an inference of discrimination. ***Kline***

***v. TVA,*** 128 F.3d 337, 348 (6th Cir. 1997). Plaintiff need only prove direct or circumstantial

evidence, not both. ***Id.*** at 348-49.

If plaintiff presents direct evidence of discrimination, the ***McDonnell-Burdine*** paradigm

is of no consequence. ***Kline,*** 128 F.3d at 349. If direct evidence of discrimination is lacking,

plaintiff must prove a prima facie case of discrimination. In order to establish a prima facie case

of discrimination, the plaintiff must show:

> 1) that [s]he is a member of a protected group, 2) that [s]he was subject to an
> adverse employment decision, 3) that [s]he was qualified for the position, and 4)
> that [s]he was replaced by a person outside of the protected class.

***Kline,*** 128 F.3d at 349 (citing ***Mitchell,*** 964 F.2d at 582). In the case of age discrimination,

plaintiff can establish the fourth prong of her prima facie case by showing that she was replaced

by a substantially younger individual, even if that individual is within the protected class.

*O'Connor v. Consolidated Coin Caterers Corporation,* 517 U.S. 308, 313 (1996); see also

*Manzer v. Diamond Shamrock Chemicals Company,* 29 F.3d 1078, 1081 (6th Cir. 1994).

Plaintiff may also establish the fourth prong of a prima facie case by showing that she was treated less favorably than a similarly situated employee outside of her protected class. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002)  In such a case, plaintiff must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances which would distinguish their conduct or the employer's treatment of them for that conduct. *Id.* at 352 (quoting *Mitchell,* 964 F.2d at 583); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000). Precise equivalence in culpability between employees is not required. *Smith,* 220 F.3d at 762 (citing *Harrison v. Metropolitan Government,* 80 F.3d 1107, 1115 (6th Cir. 1996)). An employer's more severe treatment of more egregious circumstances cannot give rise to an inference of discrimination sufficient to support a prima facie case. *Clayton,* 281 F.3d at 612.

If plaintiff establishes her prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981). If the defendant carries this burden, the plaintiff must prove that the proffered reason is pretextual. *Id.* The plaintiff can establish pretext by a direct

9

showing that a discriminatory reason more likely motivated the employer or by indirectly showing that the employer's reason is not credible. ***Kline,*** 128 F.3d at 342-43. Under appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." ***Reeves v. Sanderson Plumbing Products, Inc.,*** 530 U.S. 133, 148 (2000).

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; or 3) the reasons were insufficient to warrant a discharge. ***Manzer,*** 29 F.3d at 1084. The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. ***Id.*** The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. ***Id.*** The first and third showing permit, but do not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case. ***Id.***

For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. ***Id.*** Plaintiff must therefore come forward with circumstantial evidence of discrimination which makes it "'more likely than not' that the employer's explanation is a pretext,

or coverup." ***Id.***

The United States Court of Appeals for the Sixth Circuit has cautioned that, "The soundness of an employer's business judgment . . . may not be questioned as a means of showing pretext." ***Brocklehurst v. PPG Industries, Inc.,*** 123 F.3d 890, 898 (6th Cir. 1997). In its recent decision in ***Wexler v. White's Furniture***, the Sixth Circuit made clear that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." 317 F.3d 564, 576 (6th Cir. 2003)(citing ***Smith v. Chrysler Corp.,*** 155 F.3d 799, 807 (6th Cir. 1998)(in evaluating the defendant's proffered nondiscriminatory reason, the court should inquire into "whether the employer made a reasonably informed and considered decision before taking an adverse employment action") and ***In re Lewis,*** 845 F.2d 624, 633 (6th Cir. 1988)(plaintiff may establish pretext by showing that the asserted business judgment was so "ridden with error that defendant could not honestly have relied upon it."))

Age-related comments may create a genuine issue of material fact as to whether an employer held stereotypical beliefs about the capabilities of older employees which influenced the employer's adverse employment decision. See ***Wexler,*** 317 F.3d at 572. The Sixth Circuit has stated that in determining whether statements show employer bias, the pertinent considerations are whether the comments were made by a decision maker or by an agent within the scope of his employment; whether the comments were related to the decision making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the adverse employment action. ***Cooley v. Carmike Cinemas, Inc.,*** 25 F.3d 1325, 1330 (6th Cir. 1994). In ***Wexler,*** the Court determined that the age-related comments alleged there

11

raised an issue as to whether employer bias affected the adverse employment decision in that they were made by a decision maker, they indicated a belief that a person's capabilities for the plaintiff's job position diminish with age, and several of the comments were directed at the plaintiff at the very time he was being demoted. 317 F.3d at 572.

## V. Opinion

### A. Prima facie case

Defendant claims that plaintiff cannot establish a prima facie case. Defendant avers that in order to show that she was qualified, plaintiff must prove that she was performing her job at a level that met defendant's legitimate expectations and was to defendant's satisfaction. Defendant

cites three Sixth Circuit decisions that predate *Wexler* in support of its position. Defendant contends that plaintiff was not qualified for her position as a matter of law because her job performance was unacceptable. Defendant cites the alleged performance failures which purportedly led to plaintiff's termination as evidence that her job performance did not meet her employer's legitimate expectations.

Defendant also contends that while plaintiff can establish that she was initially replaced by a younger individual, the person who subsequently replaced that individual was 50 years old. Defendant alleges that because a 50 year-old became the Branch Service Manager at Hyde Park Plaza less than a year after plaintiff's employment was terminated, an inference of age discrimination should not be drawn.

The Court finds that plaintiff has come forward with sufficient evidence to establish a prima facie case of discrimination. Plaintiff has shown that she was in the protected class for age discrimination, that she was terminated, and that she was replaced by an individual outside the protected class. The Court also finds that plaintiff has come forward with sufficient evidence to support a finding that she was qualified for her position. The Sixth Circuit has cautioned that, "when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Wexler,* 317 F.3d at 574-575 (citing *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 660-61 (6th Cir. 2000)). A court should focus on the plaintiff's objective qualifications. *Id.* at 575. "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that [her] qualifications are at least equivalent to the minimum objective criteria

required for employment in the relevant field." *Id.* The focus should be on criteria such as the

plaintiff's education, experience in the relevant field, and demonstrated possession of the

necessary general skills. *Id.* When the evidence in this case is examined independent of the

reasons offered by defendant for plaintiff's termination and the focus is placed on plaintiff's

objective qualifications, there is evidence to support a finding that plaintiff was qualified for her

position. Thus, defendant is not entitled to summary judgment on the ground that plaintiff has

failed to establish a prima facie case.

### B. Same-actor inference

Defendant contends that the Sixth Circuit has adopted the rule that where the hirer and the

firer are the same individual, and the termination occurs within a relatively short time span

following the hiring, a strong inference exists that discrimination was not a determining factor for

the adverse action taken by the employer. Defendant contends that plaintiff was hired by Pendl,

upon the recommendation of Angel and Humphries, when plaintiff was 59 years old, and was

fired upon the recommendation of these same individuals less than four months later, with Pendl

having the ultimate responsibility for both the hiring and firing of plaintiff. Defendant argues that

the situation creates a strong inference that there was no discriminatory animus in the decision to

terminate plaintiff's employment, and consequently demonstrates that there is no basis for

plaintiff's claim that PNC discriminated against her based on her age. Plaintiff contends that it is

inappropriate to draw a same-actor inference in favor of the moving party at the summary

judgment stage. Plaintiff also argues that the inference is inapplicable in this case because Pendl

made the hiring decision and extended the offer to plaintiff whereas Humphries made the decision

to terminate plaintiff's employment. Plaintiff contends that defendant's "ultimate responsibility"

argument in overly expansive.

The "same-actor" inference "allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." ***Buhrmaster v. Overnite Transportation Co.,*** 61 F.3d 461 (6th Cir. 1995). In ***Wexler,*** the Court rejected the notion that a mandatory inference must be applied in favor of an employer on summary judgment whenever the claimant has been hired and fired by the same individual. 317 F.3d at 573. The Court specifically held that where "the factfinder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact." ***Id.*** at 573-74.

The Court declines to draw the same-actor inference under the facts of this case. The record indicates that several of the same individuals were involved in the decision to hire plaintiff and the decision to fire her and that Pendl was ultimately responsible for both decisions. (Pendl depo. pp. 10, 23-25; Angel depo, p. 19). While it is unlikely that those individuals who concurred in the decision to hire plaintiff would concur in the decision to fire her only a few months later based on her age, it would be inappropriate to draw the same-actor inference in light of a discrepancy in the record as to whether Humphries, plaintiff's immediate supervisor and a key player in the termination decision (see Pendl depo., p. 25), was likewise involved in the decision to hire plaintiff (see doc. 19, exh. A, Humphries Aff. ¶ 4; Angel depo., pp. 19-20).

### C. Pretext

Defendant contends that there is no evidence that its reason for terminating plaintiff was a pretext for age discrimination. Defendant articulates as the reason for the termination plaintiff's unsatisfactory job performance, including multiple employee and customer complaints, a failure

on numerous occasions to follow company policy, and plaintiff's repeated tardiness coupled with long lunch breaks.

Plaintiff alleges that there is conflicting evidence as to defendant's reason for terminating her and that defendant's "shotgun" approach in alleging problems with plaintiff's performance allows an inference that defendant is lying. Plaintiff contends that defendant's written explanations for plaintiff's verbal warning, written warning and probation were vague and generally lacked specifics as did the documentation of defendant's other performance-related meetings, but that defendant now submits explanations for its disciplinary actions which are clearly beyond the ambit of any disciplinary action taken. Plaintiff alleges that although defendant now asserts that plaintiff had a tardiness problem during her first few weeks of work at the Bank, the dates cited are not mentioned in the August 8th verbal warning or the September 1st written warning.[1] Plaintiff also states that, "Defendant cites numerous phone calls from staff and complaints from staff as its basis for disciplining Plaintiff for alleged communication problems . . . However, Defendants cites at least two incidents that occurred prior to the verbal warning on August 8, and at least two incidents that occurred subsequent to the probationary step on September 18." Plaintiff also alleges that although defendant now makes an issue of an alleged violation of banking policy that occurred when plaintiff took information over the telephone from a customer regarding a wire transfer, defendant specifically regarded this incident as a coaching instruction and it was not a factor in the probation decision (Angel depo. p. 60-61).

The Court finds that plaintiff has not shown that defendant has provided conflicting

---

[1] The September 1st written warning does list five dates on which plaintiff was late for work and the times she arrived. These five incidents all occurred following the August 11th e-mail advising plaintiff of the "critical" importance of arriving to work by 9:00 a.m.

excuses for terminating her employment. Nor has plaintiff come forward with evidence, or pointed to material discrepancies in the record, which would support an inference that defendant is lying about the reasons for the termination of her employment. Defendant has consistently alleged as the reason for plaintiff's termination unsatisfactory performance based on a series of deficiencies, including tardiness, failure to follow bank policy, transaction errors, and complaints by both customers and staff arising out of plaintiff's interactions with employees and the public. Although plaintiff denies that she committed certain infractions which staff or customers reported to her supervisors, otherwise disputes defendant's version of the incidents, and offers excuses for her conduct, she admits to several customer complaints, instances of tardiness, and problematic incidents with staff which were reported to her supervisors and on which defendant allegedly based its termination decision. Plaintiff characterizes defendant's reliance on these incidents in support of its termination decision as trivial post-hoc rationalizations. It is clear from the record, however, that defendant was concerned about performance deficiencies from the inception of plaintiff's employment and consistently documented what it perceived to be issues which plaintiff needed to address. While not all of the incidents about which various deponents in this case have testified when describing plaintiff's performance deficiencies are documented in plaintiff's disciplinary record, and while certain incidents in and of themselves could be characterized as trivial, the record does not support a finding that plaintiff's performance deficiencies as consistently set forth in defendant's employment records are a post-hoc rationalization for the termination of her employment or are so insignificant that they could not justify defendant's termination decision.

As further evidence of pretext, plaintiff alleges that she was treated differently than

similarly-situated younger employees. Specifically, plaintiff claims that defendant treated Lewis, who was in her 20s, more favorably in that (1) only plaintiff was disciplined by Humphries for the after-hours shouting match between plaintiff and Lewis (Humphries depo. 116-117, Lewis depo. 44-49) whereas Lewis was disciplined when she engaged in a shouting match with plaintiff's much younger replacement during banking hours (Lewis depo. 80-81); (2) Humphries directed Lewis to report any problems or observations of plaintiff to her, was eager to assist Lewis with any problems, and Lewis' complaints directly led to disciplinary action against plaintiff; and (3) Humphries directly demonstrated her age-related bias when disciplining plaintiff by ignoring Lewis' behavior and offering no assistance to plaintiff when she complained of problems with Lewis or other personnel to Humphries, other than explaining to plaintiff on one occasion, "Glorianne, these [bank employees] are younger people. You just don't know how to talk to them[;] as an older person you have to learn to talk to these people" (plaintiff's depo. pp. 36, 62), and telling plaintiff if she made comments to Humphries about a bank employee, "You have to remember she's young." (Plaintiff's depo., p. 114).

The Court finds that plaintiff has not come forward with sufficient evidence which, if proven as true, could establish that she was treated differently than a similarly-situated employee. The record does not permit a finding that plaintiff and Lewis engaged in acts of comparable seriousness. The record shows that both plaintiff and Lewis shared blame for the shouting match they engaged in, but plaintiff's claim that she was disciplined for the incident whereas Lewis was not finds no support in the record. To the extent plaintiff construes the termination of her employment as discipline for the incident, defendant's failure to take similar corrective action against Lewis is not indicative of pretext because plaintiff admittedly committed numerous other

infractions which purportedly led to the termination of her employment, whereas plaintiff has not pointed to comparable multiple infractions by Lewis for which Lewis was not disciplined.

As further evidence of pretext, plaintiff relies on the comments purportedly made by Humphries which plaintiff believes to be indicative of age bias. Accepting as true plaintiff's

representations that Humphries made the statements attributed to her, the statements do not

support a finding of pretext. Unlike the statements in **Wexler**, 317 F.3d at 572, Humphries'

statements were not made in the context of disciplinary action against plaintiff or her termination

and they do not evidence any stereotypical beliefs on Humphries' part as to older individuals'

capability to perform the functions of their jobs. The statements are thus not probative of an age

bias.

In addition, plaintiff claims that defendant's alleged failure to comply with its progressive

disciplinary policy is evidence of pretext. Plaintiff acknowledges that the four steps of defendant's

disciplinary policy were followed in her case but implies that defendant did not follow proper

procedures because it terminated her employment before the 60-day probationary period had

ended. Plaintiff does not point to any evidence in the record to substantiate her claim that under

defendant's disciplinary policy or pursuant to its established procedures, an employee is entitled to

remain employed for the full duration of the probationary period unless the employee has

committed an egregious offense such as dishonesty or theft. Thus, the fact that plaintiff's

employment was terminated before the conclusion of the probationary period cannot reasonably be

construed as evidence of pretext.

Plaintiff also contends that there is evidence of pretext in that defendant put up road blocks

to prevent her from doing her job by taking away her authority over Lewis and the tellers and by

failing to have weekly meetings between plaintiff and Humphries following the written warning as

specified in the corrective action form. Accepting as true plaintiff's representations that defendant

deprived her of supervisory authority and did not follow through on its representation that

Humphries would meet with plaintiff on a weekly basis, the record does not substantiate her claim

that defendant tried to hinder her success in the position for which she was hired. To the contrary, the evidence shows that defendant made multiple and sustained efforts to help plaintiff overcome her performance deficiencies, including providing additional training and broaching with her the option of transferring to a smaller branch. No reasonable juror could find pretext on this basis.

To conclude, drawing all inferences in plaintiff's favor, the Court finds that plaintiff has not come forward with evidence which, if accepted as true, could support a finding that defendant's articulated reason for the termination of plaintiff's employment is pretextual. The evidence shows that defendant made a reasonably informed and considered decision before terminating plaintiff's employment for unsatisfactory performance. Plaintiff has not come forward with evidence which permits an inference that the reason for the decision had no basis in fact, did not actually motivate the discharge, or was insufficient to motivate the discharge. For these reasons, defendant is entitled to summary judgment on plaintiff's age discrimination claims.

### D. Public policy claim

Defendant is entitled to summary judgment on plaintiff's public policy claim for the same reasons stated in connection with the Court's resolution of her age discrimination claims.

## VI. Conclusion

In accordance with the foregoing, defendant's motion for summary judgment is

**GRANTED.** Defendant is entitled to judgment in its favor on all of plaintiff's claims against it.

This case is hereby **DISMISSED** and is **TERMINATED** on the docket of this Court at plaintiff's

cost.

**IT IS SO ORDERED.**


S/Herman J. Weber
_____
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\01-571msj.wpd

22